**Affirmed and Memorandum Opinion filed September 8, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00086-CV

**CITY OF HOUSTON, Appellant**

**V.**

**CHRISTYN  BRECKENRIDGE, Appellee**

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2019-22876**

## MEMORANDUM  OPINION

This is a personal injury case arising from Appellee Christyn Breckenridge's fall into a water utility hole in the sidewalk in downtown Houston.  The City of Houston appeals the denial of its summary judgment motions, arguing in three issues that the trial court erred by denying its summary judgment motions because (1) "an uncovered water meter box in a sidewalk is not a special defect"; (2) one of its inspector's placement of a cone inside the water utility hole shields the City from Breckenridge's claim; and (3) had Breckenridge pled an ordinary premises

defect claim, she admitted that nothing prevented her from seeing the water utility hole in the sidewalk. We affirm.

## BACKGROUND

On July 26, 2018, Breckenridge was walking on a pedestrian sidewalk on 1515 Pease Street in downtown Houston, when she "stepped into an uncovered hole in a pedestrian sidewalk, causing her foot, ankle, and heel to get stuck in the hole and fall."[1] Breckenridge sued the City on March 29, 2019, pleading a negligence cause of action based on special defect, alleging that the "uncovered hole in the pedestrian sidewalk constituted a special defect." The City answered, asserting governmental immunity as a bar to suit and as an affirmative defense to liability as well as official immunity as an affirmative defense.

In September 2020, the City filed its Hybrid Traditional and No-Evidence Motion for Final Summary Judgment on Immunity, Causation, and Damages.[2] As relevant to this appeal, the City argued that it was shielded by immunity from suit and the trial court lacked subject matter jurisdiction over Breckenridge's suit because (1) the water utility hole is not a special defect and therefore Breckenridge failed to plead a valid waiver of the City's immunity under the Texas Tort Claims Act; (2) Breckenridge "had actual knowledge of the condition" admitting that nothing prohibited her from seeing the water utility hole; and (3) the City did not breach its duty to warn Breckenridge about the water utility hole because its inspector, Donnell Kennedy, had placed an orange cone inside the water utility

---

[1] The parties use "hole", "water meter box", "uncovered man-made utility hole", and "uncovered water utility hole" to refer to the water utility hole at issue in this case. For the sake of uniformity, we will use the term "water utility hole."

[2] Although the City filed a hybrid summary judgment motion, it only moved on no-evidence grounds regarding causation and damages, arguing Breckenridge has no evidence of causation or damages "due to multiple gaps in treatment and [her] failure to designate causation experts." These grounds are neither presented nor at issue in this appeal.

hole in February 2018. A few days later, the City filed its First Amended Hybrid Traditional and No-Evidence Motion for Final Summary Judgment on Immunity, Causation, and Damages only to substitute the transcript excerpts of Kennedy's deposition in place of the video deposition.

In October 2020, Breckenridge filed a response to the City's first amended hybrid summary judgment motion, contending that (1) she "pled and presented sufficient evidence that the subject uncovered water utility hole constituted a special defect which proximately caused" her injuries so that the City's immunity is waived by the Texas Tort Claims Act; (2) the water utility hole is a special defect because "it is like an excavation or obstruction on the road, street, or sidewalk"; (3) there is no evidence that she knew of the water utility hole; and (4) the City breached its duty to warn because (a) there is a fact question whether Kennedy in fact placed a cone in the water utility hole, and (b) leaving a lightweight cone and expecting it to stay in place for months is inadequate. In support of her response, Breckenridge attached numerous exhibits, including Kennedy's deposition testimony excerpts, the video deposition of City inspector Patrick Riley who had secured the water utility hole at issue in the summer of 2017, Breckenridge's deposition testimony excerpts, 3-1-1 complaints about the water utility hole at issue, and photos.

Two days later, the City filed its reply arguing it is entitled to summary judgment on Breckenridge's sole cause of action because the water utility hole in the sidewalk does not constitute a special defect and, even if it were a special defect, Breckenridge "presented no evidence to refute that [the City] did not breach its duty to" warn of the alleged defect.

That same day, the City also filed its Second Traditional Motion for Final Summary Judgment on Official Immunity, arguing it "is shielded by the official

3

immunity of its employee" Kennedy. In that regard, the City asserted that Kennedy was (1) acting within the scope of his authority when he placed the cone in the water utility hole because he "was discharging the duties generally assigned to him"; (2) "performing a discretionary duty when the accident occurred" because "Kennedy testified that what it means to secure an area depends on the circumstances and inspectors can use their individual judgment when determining how to secure an area"; and (3) "acting in good faith when the accident occurred" because "Kennedy testified that in his experience, he would expect a two to three-pound cone placed inside the water meter to stay there for a period of six or seven months on its own if no one removed it" and he "also opined that a reasonably prudence [sic] inspector under the same or similar circumstances could have believed that his actions to secure the area by placing a cone in the uncovered [water utility hole] were justified based upon his perception of the facts at the time." To support its motion, the City attached Kennedy's affidavit in which he stated that he "believe[d] that a reasonably prudent inspector under the same or similar circumstances could have believed that [his] actions to secure the area by placing a cone in the uncovered meter box were justified based on [his] perception of the facts at the time."

In January 2021, Breckenridge filed a response to the City's Second Traditional Motion for Final Summary Judgment on Official Immunity. She argued that the trial court has subject matter jurisdiction in this case because (1) she "pled and presented sufficient evidence that the subject condition constituted a special defect such that Defendant's immunity is waived"; (2) "the City despite arguments related to Donnell Kennedy's capacity as an employee, the [C]ity is NOT entitled to immunity related to premises defect"; and (3) the City failed to follow its own procedures and "warn patrons of the danger prior to [her] trip and

4

fall."

On January 29, 2021, the trial court held a hearing on the City's summary judgment motions and signed an order denying the City's Second Traditional Motion for Final Summary Judgment on Official Immunity. On February 1, 2021, the trial court signed an order denying the City's First Amended Hybrid Traditional and No-Evidence Motion for Final Summary Judgment on Immunity, Causation, and Damages. The City filed a timely interlocutory appeal.[3]

## ANALYSIS

### I. The City's Issues

The City challenges the trial court's orders denying summary judgment in three issues:

1. Did the trial court err in denying Houston's First Amended Traditional Motion for Final Summary Judgment on Immunity because an uncovered water meter box in a sidewalk is not a special defect?

2. Did the trial court err in denying Houston's motions because Inspector Kennedy's placement of an orange safety cone inside the water meter box shields Houston from Breckenridge's claim?

3. To the extent Breckenridge had pled an ordinary premises defect, did the trial court err in denying Houston's First Amended Traditional Motion for Final Summary Judgment on Immunity because Breckenridge admitted nothing prevented her from seeing the uncovered water meter box?

### II. Standard of Review

Subject matter jurisdiction is necessary to a court's authority to decide a

---

[3] This court has jurisdiction to consider an interlocutory appeal from the denial of a summary judgment motion by a governmental unit seeking a dismissal based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 541 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

5

case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295, at *4 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.). A plaintiff must allege facts affirmatively showing the trial court has subject matter jurisdiction. *Tex. Air Control Bd.*, 852 S.W.2d at 446; *Manning*, 2021 WL 1257295, at *4. A party may challenge the lack of subject matter jurisdiction by a plea to the jurisdiction or by other procedural vehicles, such as a motion for summary judgment filed in this case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Because subject matter jurisdiction is a question of law, we review the trial court's ruling *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Manning*, 2021 WL 1257295, at *4.

To obtain a traditional summary judgment based on a lack of subject matter jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019). A nonmovant may raise a genuine issue of material fact by producing "'more than a scintilla of evidence establishing the existence of the challenged element.'" *Swanson*, 590 S.W.3d at 551 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). While the City asserted immunity by way of a traditional summary judgment motion, the applicable standards generally mirror those governing review of an order denying a plea to the jurisdiction. *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. A defendant's jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at

6

*4.

The City challenged the existence of jurisdictional facts; therefore, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *See Miranda*, 133 S.W.3d at 227. "In both traditional summary judgment and plea to the jurisdiction contexts, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor." *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. If the relevant evidence is undisputed or does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4. If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28.

## III. Governmental Immunity

The City argues in its first issue that the trial court erred in denying its First Amended Traditional Motion for Final Summary Judgment on Immunity because a water utility hole in a sidewalk is not a special defect.

### A. Applicable Law

The Texas Tort Claims Act (the "Act") waives the City's governmental immunity for suits for personal injuries caused by a condition of real property if the governmental unit would, were it a private person, be liable under Texas law. *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997) (per curiam); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Under the Act, a claim based on a

7

condition of real property is a premise defect claim — either ordinary or special. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385-87 (Tex. 2016).

The Act provides different standards of care depending on whether the claim arises from an ordinary premise defect or a special defect. *Roberts*, 946 S.W.2d at 843; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.022. When there is an ordinary premise defect, a governmental unit owes the duty that a private person owes to a licensee: not to injure the licensee by willful, wanton, or grossly negligent conduct and to use ordinary care in warning a licensee of a dangerous condition, or making the condition safe, that is actually known to the owner but not to the licensee. *Sampson*, 500 S.W.3d at 385; *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g).

On the other hand, if the condition is a special defect, the governmental unit has the same duty to warn as a private landowner owes to an invitee: to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware. *Roberts*, 946 S.W.2d at 843; *Payne*, 838 S.W.2d at 237; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b).

## B.    Special Defect

In its first issue, the City contends that the trial court erroneously denied its First Amended Traditional Motion for Final Summary Judgment on Immunity because it established that the water utility hole in the sidewalk in which Breckenridge fell is not a special defect so that it retained its governmental immunity.

Whether a condition of real property is an ordinary premise defect or a special defect is a question of law for the court to decide. *Roberts*, 946 S.W.2d at

843; *Payne*, 838 S.W.2d at 238; *City of Houston v. Joh*, 359 S.W.3d 895, 898 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Sampson*, 500 S.W.3d at 385. The Act does not define "special defects" except to state that they include "excavations or obstructions on highways, roads, or streets." *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (per curiam); *City of Denton v. Paper*, 376 S.W.3d 762, 763 (Tex. 2012) (per curiam). The supreme court has construed special defects to include other defects of the same kind or class as the two expressly mentioned in the statute. *Paper*, 376 S.W.3d at 763; *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam); *Roberts*, 946 S.W.2d at 843 ("The examples in the statute are not exclusive, and courts are to construe 'special defects' to include defects of the same kind or class as the ones expressly mentioned in the statute."). "Defects on a sidewalk may be within the class 'because a sidewalk is sufficiently related to a roadway.'" *City of Austin v. Furtado*, No. 03-21-00083-CV, 2021 WL 6194365, at *3 (Tex. App.—Austin Dec. 31, 2021, pet. denied) (mem. op.) (quoting *City of Austin v. Credeur*, No. 03-19-00358-CV, 2021 WL 501110, at *3 (Tex. App.—Austin Feb. 11, 2021, no pet.) (mem. op.)); *see also City of El Paso v. Chacon*, 148 S.W.3d 417, 422 (Tex. App.—El Paso 2004, pet. denied).

Deciding whether an alleged defect is within the special defect class is determined on a case-by-case basis. *Furtado*, 2021 WL 6194365, at *3. In deciding this question, courts previously have considered characteristics of the class of special defect, such as (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs the ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway. *See Univ. of Tex. at Austin v. Hayes*,

9

327 S.W.3d 113, 116 (Tex. 2010) (per curiam). Texas' "special-defect jurisprudence turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Id*. (quoting *Denton Cty. v. Beynon*, 283 S.W.3d 329, 332 (Tex. 2009)).

Citing cases from the Eastland, Fort Worth, and Amarillo courts of appeals, the City first contends that it was entitled to summary judgment because "[t]he majority of courts deciding this issue have held that an uncovered water meter box is not a special defect." We reject the City's contention. First, we note that while we respect our sister courts' decisions as persuasive authority, we are not bound by their precedent. Second, these opinions are factually distinguishable. *See City of Bedford v. Smith*, No. 02-16-00436-CV, 2017 WL 4542858, at *1, 3 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.) (plaintiff was walking across the grass to reach a sidewalk in front of her apartment when she stepped onto a manhole lid covering a water meter box and the lid flipped open causing plaintiff to fall into the manhole; court held the "'broken, defective, and/or improperly secured' manhole cover in this case is not special defect"); *Bustillos v. City of Midland*, No. 11-07-00038-CV, 2008 WL 2058551, at *1, 3 (Tex. App.—Eastland May 15, 2008, no pet.) (mem. op.) (finding open water meter box did not constitute a special defect in the case because box "was located adjacent to dumpsters that lined the side of the alley" and "appellant was not an ordinary user of the alley at the time" she stepped into the box since an "ordinary user of the alley would not encounter the hole because the dumpsters located on the side of the alley precluded users from traveling in a path parallel to the alley"); *Duenes v. City of Littlefield*, No. 07-05-0420-CV, 2007 WL 270415, at *1, 3 (Tex. App.—Amarillo Jan. 31, 2007, no pet.) (mem. op.) (when plaintiff stepped on an unsecured meter box in a grassy area, the cast iron lid flipped and caused plaintiff's leg to fall into the box;

10

court held the unsecured meter box was not a special defect because it was approximately seventeen and a half feet from the residential street and not located in an area where users of the roadway would normally travel); *Martinez v. City of Lubbock*, 993 S.W.2d 882, 884-85 (Tex. App.—Amarillo 1999, pet. denied) (instead of using the road about two feet away, plaintiff walked along a dirt path in a vacant lot when he stepped into an uncovered water meter hole; court concluded the hole "was outside the path of those normally traveling on the road", did not pose a threat to ordinary users of the road, and did not constitute a special defect); *Bishop v. City of Big Spring*, 915 S.W.2d 566, 571 (Tex. App.—Eastland 1995, no writ) (finding the water meter box hole was not a special defect because the "normal users of the road would not normally travel closer to the house than the mailbox and would not encounter the hole" so that "the condition of the hole did not create a hazard or danger to the normal users of the road as contemplated by Section 101.022(b)" to make it a special defect).

The City also contends that it was entitled to summary judgment because it demonstrated that the water utility hole was located in the sidewalk and "not the surface of the roadway itself" and any defect cannot be a special defect unless it is on the road itself. Again, we disagree. First, the cases the City cites to support its contention do not hold that a defect cannot be a special defect unless it is on a road versus a sidewalk, nor was such a question presented. *See Tex. Dep't of Transp. v. Ives*, No. 05-18-01527-CV, 2020 WL 2715367, at *1, 3 (Tex. App.—Dallas May 26, 2020, pet. denied) (mem. op.) (plaintiff walked at night in the grass several feet off the roadway and fell into a drop inlet grate; court concluded the drop inlet grate in the grass beside the road is not in the same class as an excavation or obstruction on a roadway so that the grate in this case cannot be placed within the class of special defects); *Camarena v. City of Weslaco*, No. 13-17-00243-CV, 2018 WL

11

4143764, at *1, 4 (Tex. App.—Corpus Christi Aug. 30, 2018, no pet.) (mem. op.) (canal was not a special defect because plaintiff, "traveling approximately ten feet off the roadway before driving into the canal, is not an ordinary user under the special defect analysis"); *City of McAllen v. Hernandez*, No. 13-04-182-CV, 2005 WL 2000818, at *1, 8 (Tex. App.—Corpus Christi Aug. 22, 2005, pet. denied) (mem. op.) (court concluded that lid on drainage box was not a special defect because it was not "a condition that presents an unexpected and unusual danger to ordinary users of the roadway"; court stated that plaintiff "left the sidewalk and crossed the grass and the drainage box in order to get to the street rather than continuing on the sidewalk to the corner and approaching the street from there," when "she stepped on the shop-made lid, it gave way and tilted, causing her to fall," and when she "left the sidewalk instead of continuing on the sidewalk to the corner in order to get to the crosswalk and cross the street, she was not an 'ordinary user' as the law provides").

Second, we agree that a defect on a sidewalk may be a special defect because a sidewalk is sufficiently related to a roadway.[4] *See Furtado*, 2021 WL 6194365, at *3 (not readily apparent sunken area on a public sidewalk found to be a special defect); *City of Austin v. Credeur*, No. 03-19-00358-CV, 2021 WL 501110, at *3 (Tex. App.—Austin Feb. 11, 2021, no pet.) (mem. op.) (sidewalk was sufficiently related to the street to come within the realm of special defects, but court held the improperly sealed water valve cover was not a special defect because plaintiff encountered it off the sidewalk in an area not intended for ordinary pedestrian use); *City of Austin v. Rangel*, 184 S.W.3d 377, 383-84 (Tex. App.—Austin 2006, no

---

[4] We note that we stated in *City of Houston v. Joh* that "in almost every instance in which a court has examined an uncovered, man-made hole on a public street or a sidewalk adjacent to a street, those courts have determined that hole to be a special defect in the same class 'as excavations or obstructions.'" 359 S.W.3d at 901, n.7.

pet.) (a defect need not be on the surface of the road itself but the condition must be sufficiently related to the street to constitute a special defect; court held that uncovered meter box on downtown sidewalk was a special defect of the kind and class covered by the Act and that it posed an unexpected and unusual danger to ordinary users of the sidewalk); *Chacon*, 148 S.W.3d at 425 (a defect need not occur upon the road surface itself to constitute a special defect and a condition on a sidewalk can be a special defect; court held that utility pole hole located in sidewalk where a pedestrian would normally walk and not expect to encounter it was a special defect); *see also Martinez*, 993 S.W.2d at 884 ("it must be noted that the excavation, obstruction, or the like need not be on the surface of the road itself"); *Bishop*, 915 S.W.2d at 571 ("conditions threatening normal use of a road may be 'special defects' even though they do not occur on the surface of the road").

Additionally, we note that a sidewalk is defined as that portion of a street that is between a curb or lateral line of a roadway and the adjacent property line and is intended for pedestrian use. Tex. Transp. Code Ann. § 541.302(16). Keeping in mind that whether an alleged defect is within the special defect class is determined on a case-by-case basis, we turn to analyzing whether the water utility hole in this case constitutes a special defect.

The parties presented several pictures (taken from different angles) of the water utility hole, the sidewalk, and the roadway close to the sidewalk which showed the hole's location and size. The closeup pictures showed that the water utility hole was about ten inches deep, oval-shaped, and a bit larger than a standard-sized cinderblock. The hole was located in that part of the sidewalk where pedestrians would likely walk as well as step into the crosswalk to cross the street. The hole was not readily apparent or expected and changed the "essential

13

structure" of the part of the sidewalk where Breckenridge stepped and fell. *See Roberts*, 946 S.W.2d at 843; *Furtado*, 2021 WL 6194365, at *4. Evidence also showed that City inspector Riley, who had requested that a lid be placed on that same water utility hole over a year before Breckenridge's fall, wrote in his report that action was immediately required as it was a hazard to pedestrians.

A normal user of the roadway in this case would be a pedestrian on the sidewalk, just as Breckenridge was when she stepped into the water utility hole. *See Rangel*, 184 S.W.3d at 384. Considering that "special-defect jurisprudence turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel,'" an average pedestrian would not expect to encounter a hole of this particular size on a downtown public sidewalk. *See Hayes*, 327 S.W.3d at 116 (quoting *Beynon*, 283 S.W.3d at 332); *Rangel*, 184 S.W.3d at 384; *Chacon*, 148 S.W.3d at 425. Based on the evidence presented, we conclude that this water utility hole posed an unexpected and unusual danger to ordinary users of this sidewalk and was a special defect of the kind and class envisioned by the Act. *See Furtado*, 2021 WL 6194365, at *4; *Rangel*, 184 S.W.3d at 384; *Chacon*, 148 S.W.3d at 425.

Because the water utility hole in this case constituted a special defect as a matter of law, the City was not entitled to summary judgment in that regard and the trial court therefore did not err in denying the City's First Amended Traditional Motion for Final Summary Judgment on Immunity. Accordingly, we overrule the City's first issue.

## C.     Duty to Warn

In its second issue, the City contends that even if the water utility hole is a special defect, the trial court nonetheless erred in denying its First Amended Traditional Motion for Final Summary Judgment on Immunity because the City

14

established that it did not breach its duty to warn of the special defect when there is unrefuted evidence that Kennedy placed a cone in the water utility hole and the City is therefore shielded from Breckenridge's claim.

Because the water utility hole was a special defect, the City had a duty to warn of that defect. *See Payne v. City of Galveston*, 772 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1989, writ denied). The City claims that it discharged its duty of care to warn of the special defect because Kennedy placed a cone inside the water utility hole on February 13, 2018. It is undisputed that there was no cone or anything else that could have warned pedestrians of the water utility hole on July 26, 2018, when Breckenridge stepped into the hole and fell. In its brief, the City provides no explanation or authority to support its assertion that it conclusively warned pedestrians of the hole because Kennedy allegedly placed a cone weighing about two to three pounds in the hole almost six months before Breckenridge fell. Because Breckenridge presented evidence that no warning cone was present on the day of the accident, we conclude that the City failed to establish that it is entitled to summary judgment because a genuine fact issue exists whether it discharged its duty of care by warning of the danger the water utility hole posed. Accordingly, we overrule the City's second issue with regard to this assertion.[5]

## D. Official Immunity

In its second issue, the City also contends that the trial court erroneously denied its Second Traditional Motion for Final Summary Judgment on Official Immunity because Kennedy's official immunity shields the City from Breckenridge's suit. In that regard, the City claims that Kennedy is entitled to official immunity because it established Kennedy was (1) "acting within the scope

---

[5] Within its second issue, the City also makes an official immunity argument; however, we address that argument in section D below.

15

of his authority [when] he placed the cone" in the water utility hole; (2) "performing a discretionary duty when the accident occurred"; and (3) "acting in good faith when the accident occurred."

Official immunity is an affirmative defense that protects a governmental employee from personal liability and thereby preserves a governmental employer's governmental immunity from suit for vicarious liability. *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015) (per curiam). A governmental employee is entitled to official immunity for his good faith performance of discretionary duties within the scope of the employee's authority. *Id*. at 642-43; *Gomez v. City of Houston*, 587 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc).

While governmental immunity and official immunity are distinct concepts, they become intertwined in certain circumstances through section 101.021 of the Texas Tort Claims Act. *City of Baytown v. Peoples*, 9 S.W.3d 391, 395 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see DeWitt v. Harris Cty.*, 904 S.W.2d 650, 653-54 (Tex. 1995). For example, in section 101.021(1), a governmental unit is not liable if its employee is entitled to official immunity. *Peoples*, 9 S.W.3d at 395; *see DeWitt*, 904 S.W.2d at 653. This same result may occur in section 101.021(2) if a governmental unit's liability is based on respondeat superior. *Peoples*, 9 S.W.3d at 395; *see DeWitt*, 904 S.W.2d at 653. However, section 101.021(2) is broader than section 101.021(1) because section 101.021(2) encompasses not only liability based on respondeat superior but also liability based on premise and special defects. *Peoples*, 9 S.W.3d at 395; *see DeWitt*, 904 S.W.2d at 653. When liability is based on a premise or special defect, the governmental unit is not shielded by its employee's official immunity. *See DeWitt*, 904 S.W.2d at 653; *Peoples*, 9 S.W.3d at 395. "With premise defects, liability is predicated not

upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premise and special defects as specified in section 101.022 of the Texas Tort Claims Act." *DeWitt*, 904 S.W.2d at 653 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.022).

Based on the pleadings here, this is a special defect case. Further, the City stated repeatedly that Breckenridge "exclusively pled special defect." Therefore, because the City's alleged liability is based on a special defect, the City is not shielded by its employee's alleged official immunity. *See DeWitt*, 904 S.W.2d at 653; *Peoples*, 9 S.W.3d at 395-96; *see also Gaffney v. TDCJ-ID*, No. 14-00-00572-CV, 2001 WL 1249756, at *2 (Tex. App.—Houston [14th Dist.] Oct. 18, 2001, no pet.) (mem. op., not designated for publication) (holding that "official immunity provides no basis for affirming the trial court's judgment . . . [because] the TDCJ may be liable under Gaffney's premises-liability theory, even if [TDCJ's employees] are [shielded] from liability" by official immunity). Accordingly, we overrule the City's second issue.

### E.    Ordinary Premise Defect

In its third issue, the City argues that "[e]ven if Breckenridge had pled ordinary premises defect in the alternative, the trial court erred in denying" its First Amended Traditional Motion for Final Summary Judgment on Immunity because Breckenridge admitted nothing prevented her from seeing the water utility hole.

The City acknowledges that Breckenridge "exclusively pled special defect", and we have concluded that the water utility hole in this case was a special defect as a matter of law. Therefore, we do not address the City's alternative argument. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.") Accordingly, we overrule the City's third issue.

## CONCLUSION

We affirm the trial court's January 29, 2021 order denying the City's Second Traditional Motion for Final Summary Judgment on Official Immunity and the trial court's February 1, 2021 order denying the City's First Amended Hybrid Traditional and No-Evidence Motion for Final Summary Judgment on Immunity, Causation, and Damages.

/s/    Meagan Hassan
Justice

Panel consists of Justices Wise, Jewell, and Hassan.